The opinion of the Court was delivered by
Tilghman, C. J. —
The first reason assigned by the counsel for the defendant, in support of the opinion of the Court below, is, that the receipt was signed by Thomas Huston, administrator of John Kidd, deceased, and therefore not evidence in this action, in which Thomas Huston is charged personally. But this is not a sufficient answer; for although the defendant signed the receipt as administrator, he is responsible personally. The plaintiff never had any claim against John Kidd, the intestate, for the money paid by him to the defendant, the repayment of which is demanded in this action. It is impossible that he should have had, because it was not paid until after John Kidd's death. In all cases of promises, express or implied, made to, or by, an administrator, after the death of the intestate, the action lies for or against the administrator personally. If a promissory note be given to A. as executor of B., the naming him exe *405 cutor is surplusage, and the action lies in his own name. 10 Mod. 316. 2 Lord Raym. 1215. An administrator giving a bond as administrator, is chargeable personally. 1 Dall. 347, (note.) 3 Bac. Ab. 94, Executors and Administrators, (O.) So where executors bring suit, to recover money paid by them by mistake, they should sue personally. If an executor brings an action as executor, to which the Statute of Limitations is pleaded, proof of a promise to the executor, within six years, will not support the action. And yet, in that case, if the money had been sued for and recovered .by the executor personally, it would have' been assets. But it is objected, that it would be both hard and unjust, that the defendant, who had received money through the plaintiffs mistake, and had administered it in payment of debts of the intestate, without notice of the mistake, should be responsible personally: Whereas, if he had been sued-as administrator, he might have pleaded, that he had fully administered. Undoubtedly it would be unjust, that the defendant should be deprived of his defence, by this form of action. But that is not the case. He may plead the special matter, and shew, that he had disposed of the money, in payment of debts of the intestate, before he had notice of the mistake ; just as an agent may do, who, in a like case, may defend himself, by proving that he had paid over the money to his principal, before notice. There is indeed this difference between an administrator and an agent: The administrator, besides proving that he has applied the money to the payment of debts, must shew that the estate of the intestate is insolvent, because if there are assets, he may indemnify himself. But where the agent pays over to his principal, the person who has .made the mistake, may have hjs action against the principal, which he could not have against a creditor, who had received, payment of his debt from the administrator. From necessity, therefore, the action must be brought against the administrator personally, and if he has assets by which he may be indemnified, he cannot be injured. I am of opinion, therefore, that the action was well brought against the defendant personally, though he signed the receipt as administrator. But the defendant relies on another reason for rejecting the evidence. He says, that upon the face of the paper offered in evidence, the money *406 was paid by Samuel Grier & Company, and therefore it is not evidence in this action, which is brought by Samuel Grier alone. It is true, that when a debt is due to several partners, an action cannot be supported by one of them. And if this money was really paid by Samuel Grier Company, the evidence was inadmissible, and the plaintiff must fail in his action. But that is a fact which' should have been left to the jury, because, in the receipt signed by the defendant, it is expressed, th *t the money was received of Samuel Grier. This receipt is at the foot of an account, at the head of which it is called John Kidd’s account against Samuel Grier Co, ; but the only article charged bv Kidd, is, u an order on Phineas Bond, on which Mr. Grier received five hundred and fifty-nine dollars fifteen cents.” It does not appear, that the order was produced on the trial; but from the evidence which the defendant offered, it is at least very doubtful, whether the order was not drawn by Kidd, payable to Samuel Grier, f and not to Samuel Grier Co.) The plaintiff offered to prove, that he had been compelled to refund the money to Phineas Bond, on whom the order was drawn, which is not compatible with the supposition, that the order was payable to Samuel Grier Co. or the money received from Phineas Bond by Samuel Grier, í¿? Co. The plaintiff should therefore have been permitted to give the receipt in evidence, and explain the obscurity which appeared in the account, by the other evidence which he proposed to offer afterwards. And the jury should then have been instructed, that if the money was paid to the defendant by Samuel Grier Co., the verdict should be for the defendant. When this cause goes back to the Cqmmon Pleas, the defendant will have an opportunity of availing himself of any defence which he may have, in consequence of having administered the money in payment of debts, without notice of the alleged mistake. I am of opinion, that the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.